### No. 27,809.

THE SECURITY STATE BANK, *Appellant*, v. ROY L. BONE, as Bank Commissioner, *Appellee*.

(260 Pac. 639.)

#### SYLLABUS BY THE COURT.

BANKS AND BANKING—*Authority to Buy Bonds*. The instrument, a copy of which is set out in the opinion, is one which a bank organized under the laws of this state is not authorized to buy. (*First State Bank v. Bone,* 122 Kan. 493, 252 Pac. 250, followed.)

Appeal from Shawnee district court, division No. 1; JAMES A. McCLURE, judge. Opinion filed November 5, 1927. Affirmed.

*Robert Stone, George T. McDermott, Robert L. Webb, Beryl Johnson*, all of Topeka, *Justin D. Bowersock, Robert B. Fizzell* and *John F. Rhodes*, all of Kansas City, Mo., for the appellant.

*William A. Smith,* attorney-general, and *John G. Egan,* assistant attorney-general, for the appellee.

The opinion of the court was delivered by

MARSHALL, J.: In August, 1926, the plaintiff sued to enjoin the defendant from enforcing an order made by him against the plaintiff. On April 7, 1927, judgment was rendered in favor of the defendant, and the plaintiff appeals.

The plaintiff purchased an instrument of writing, the material parts of which are as follows:

Security State Bank v. Bone.

"G. M. A. C.

No. KD-79.                                              $5,000

UNITED STATES OF AMERICA.

GENERAL MOTORS ACCEPTANCE CORPORATION GOLD NOTE.

"General Motors Acceptance Corporation, a corporation of the state of New York, for value received, hereby promises to pay the bearer on December 9, 1926, the sum of five thousand dollars ($5,000) in gold coin of the United States of America of the present standard of weight and fineness, at the office of Fidelity National Bank and Trust Company of Kansas City.

"The General Motors Acceptance Corporation hereby covenants that it will not at any time subsequent to April 1, 1926, pledge or otherwise subject to a lien any of its property or assets, without thereby expressly securing the due and punctual payment of this note, equally and ratably with any and all obligations and indebtedness secured by such pledge or other lien; provided, however, that there shall be excepted and excluded from the restriction of the foregoing provisions any financing by the General Motors Acceptance Corporation of the export or marketing of goods in foreign countries (other than the Dominion of Canada), in connection with which the General Motors Acceptance Corporation reserves the right in accordance with customary and established banking practice, to deposit or otherwise to subject to a lien receivables for collection or as the basis for the issuance of bankers' acceptances or in aid of other similar borrowing arrangements. This note shall not become obligatory for any purpose until the certificate of authentication herein shall have been signed by, or in behalf of, the comptroller of the said corporation."

Shortly thereafter the defendant wrote the plaintiff bank as follows:

"STATE OF KANSAS, BANKING DEPARTMENT,
TOPEKA, KAN., August 14, 1926.

"*Mr. W. H. Burks, President, Security State Bank, Wellington, Kan.*

"DEAR MR. BURKS—Your letter of August 10, 1926, has been received, and I note that you have discounted a note of General Motors Acceptance Corporation.

"The attorney-general has held that these are not legal investments for state banks, and you are hereby directed to remove the same from the assets of your bank within thirty days.          Very truly yours,

"ROY L. BONE, *Bank Commissioner.*"

The question presented is, Was the obligation one that the plaintiff could legally purchase under the laws of this state? The pertinent statute is section 1 of chapter 85 of the Laws of 1925, which reads:

"SECTION 1. That section 9-101 of the Revised Statutes of 1923 be amended to read as follows: Sec. 9-101. Any five or more persons may organize themselves into a banking corporation, and shall be permitted to carry on the busi-

ness of receiving money on deposit and to allow interest thereon, giving to the person depositing credit therefor; and of buying and selling exchange, gold, silver, foreign coin, bullion, uncurrent money, bonds of the United States, bonds of the state of Kansas, bonds of land banks organized under the federal farm-loan act and authorized to make loans secured by first mortgages on Kansas farm lands, bonds and warrants of cities, counties and school districts in the state of Kansas, and state, county, city, township and school bonds issued in other states of the United States than Kansas, of loaning money on real estate, chattel and personal security at a rate of interest not to exceed the legal rate allowed by law; of discounting negotiable notes and of notes not negotiable, and to own a suitable building, furniture and fixtures for the transaction of its business, of the value not to exceed one-half of the capital and surplus of such banks: *Provided,* That nothing in this section shall prohibit such bank from holding and disposing such real estate as it may acquire through the collection of debts due it."

That law was amended by section 9 of chapter 88 of the Laws of 1927 so as to provide that banks may buy and sell "secured bonds of private corporations which have been engaged in business not less than ten years, and which bonds are secured by property worth more than twice the amount of such bonds, conditioned that such bonds shall have the approval of the state banking board for such purchase." That amendment took effect June 1, 1927.

After judgment was rendered in this action, a closely similar question was presented to this court in *First State Bank v. Bone,* 122 Kan. 493, 252 Pac. 250, where this court said:

"State banks have no authority under the statute (Laws 1925, ch. 85) to buy and sell, nor to invest their assets in, bonds of a kind not named in the statute."

The opinion in that case was filed January 8, 1927. The amendment of 1927 followed that decision. In that case it was held that a written obligation, similar to the one here presented, if not the same in legal effect, was declared to be a bond within the meaning of the statute quoted. The question was there discussed at length, and what was there said might be here repeated and would be entirely pertinent. It is not repeated because it is unnecessary to do so.

The statute does not define either bonds or promissory notes. It makes a distinction, but it is almost a distinction without a difference. However, the distinction was made, and the courts must recognize it. It was recognized in *First State Bank v. Bone,* supra. The legislature, in using the term "note," probably had in mind a simple written promise by one person to pay to another, or to his

order, or to bearer, a certain sum of money at a definite time, and intended that banks should not purchase any written obligation for the payment of money other than those mentioned in the statute. This conclusion is supported by the amendment made to this law in 1927 whereby banks are authorized under certain conditions to buy and sell secured bonds of private corporations.

The instrument in question has much to indicate that it is a promissory note, but it has more to indicate that it is a bond within the meaning of the statute under consideration. The instrument is so closely parallel to the one under consideration in *First State Bank v. Bone,* supra, that it must be said that the present case is controlled by the former decision of this court.

The instrument here in controversy is not a note; it is a bond within the meaning of the statute.

The judgment is affirmed.